IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| MICHAEL CHRESTMAN, <br> As Next Friend to Melissa Wooden, | ) <br> ) <br> ) | |
| Plaintiff, | ) <br> ) | NO. 3:22-cv-00173 |
| v. | ) <br> ) | JUDGE CAMPBELL <br> MAGISTRATE JUDGE NEWBERN |
| METROPOLITAN GOVERNMENT OF <br> NASHVILLE AND DAVIDSON <br> COUNTY, TN, *et al.*, | ) <br> ) <br> ) <br> ) | |
| Defendants. | ) | |

## MEMORANDUM

Pending before the Court is a Motion to Dismiss or for Summary Judgment filed by the Metropolitan Government of Nashville and Davidson County, Tennessee, Officer Benjamin Williams, and Officer Brandon Lopez (collectively "Defendants"). (Doc. No. 10). Plaintiff Michael Chrestman filed a Response (Doc. No. 29), and Defendants filed a Reply (Doc. No. 32).

For the reasons stated herein, the Motion (Doc. No. 10) will be **GRANTED** in part, and **DENIED** in part.

### I. PROCEDURAL BACKGROUND

Plaintiff's claims arise from a March 12, 2021 incident in which Defendant Officer Benjamin Williams shot Melissa Wooden with a Taser, and Defendant Officer Brandon Lopez shot Ms. Wooden with a gun. (*See* Complaint, Doc. No. 1, ¶ 1). Ms. Wooden survived the incident but suffered injuries requiring extensive medical treatment. (*Id.*). On March 11, 2022, Plaintiff Michael Chrestman, the brother and legal conservator of Melissa Wooden, filed this instant lawsuit against Officer Williams and Officer Lopez, both officers with the Metropolitan Nashville Police

Department ("MNPD"), and the Metropolitan Government of Nashville and Davidson County, Tennessee ("Metro Nashville"). (Complaint, Doc. No. 1). Plaintiff brings claims under 42 U.S.C. § 1983 for use of excessive force in violation of the Fourth Amendment (Count I), and a state law negligence claim against Defendant Metro Nashville (Count II). (*Id*.).

Defendants move under Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff's Complaint for failure to state a claim or, in the alternative, for summary judgment under Federal Rule of Civil Procedure 56. (Doc. No. 10). Defendants contend Plaintiff fails to state a viable Fourth Amendment claim because the officers used objectively reasonable force and that the officers are entitled to qualified immunity. Defendants seek dismissal of the negligence claim against Metro Nashville on grounds that the Tennessee Government Tort Liability Act, Tenn. Code Ann. §§ 29-20-101, et seq., excludes claims that arise under civil rights. Because Defendants provide no grounds to persuade the Court that considering their motion as one for summary judgment at this pre-discovery stage is necessary or appropriate, the Court considers the motion as one to dismiss.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a complaint for failure to state a claim upon which relief can be granted. For purposes of a motion to dismiss, a court must take all of the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual allegations, accepted as true, to state a claim for relief that is plausible on its face. *Id*. at 678. A claim has facial plausibility when the plaintiff pleads facts that allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. In reviewing a motion to dismiss, the Court construes the complaint in the light most favorable to the plaintiff, accepts its allegations as

true, and draws all reasonable inferences in favor of the plaintiff. *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). Thus, dismissal is appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Guzman v. U.S. Dep't of Children's Servs.*, 679 F.3d 425, 429 (6th Cir. 2012). In considering a Rule 12(b)(6) motion, the Court may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case, and exhibits attached to Defendant's motion to dismiss provided they are referred to in the Complaint and are central to the claims. *Bassett v. National Collegiate Athletic Assn.*, 528 F.3d 426, 430 (6th Cir. 2008).

Ordinarily, the Court may not consider matters outside the pleading in considering a motion to dismiss. *Bell v. City of Southfield, Michigan*, 37 F.4th 362, 364 (6th Cir. 2022) (citing *Bassett*, 528 F.3d at 430). The Sixth Circuit has opined, however, that a district court may consider videos at this stage for the limited purpose of relying on the facts as shown by the video when they are clear and "blatantly contradict[]" or "utterly discredit[]" the allegations in the plaintiff's complaint. *Id.* (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). This includes facts shown in the video that are omitted from the complaint. *Id.* at 366 (stating that when a video reveals important facts omitted by the complaint, those facts "blatantly contract" the omission).

Here, Defendants have submitted the recordings from Officer Williams' body camera and dash camera in support of their motion.[1] (Doc. No. 10, Exs. 1 and 2 (*see* notice of manual filing at Doc. No. 22)).

---

[1] For ease of reference, the video footage from Officer Williams' body camera, cited by Defendant's as Exhibit 1 to the motion and manually filed (*see* Doc. No. 22), will be cited as "Video at [timestamp]." Because the dash camera footage does not contradict the allegations in the Complaint, there are no further references to the dash camera footage.

## III. FACTUAL BACKGROUND

Unless otherwise stated, the following facts are drawn from the Complaint (Doc. No. 1). On March 12, 2021, Melissa Wooden experienced a mental health crisis, during which she called 9-1-1, gave her address, and said she wanted police to come so that they could shoot her. (Compl., Doc. No. 1, ¶¶ 66-67). Three officers responded to the call: Officer Benjamin Williams, Officer Brandon Lopez, and Officer Thomas Denenea. (*Id.* ¶ 68). En route to the scene, the officers were informed that Ms. Wooden had a pickaxe and a baseball bat. (*Id.*, ¶ 71).

Officer Williams, whose body camera captured the events described, arrived last on the scene. When he arrived, Ms. Wooden was standing in a grassy field along Greer Road, within a few feet of an MNPD patrol car. (*Id.*, ¶¶ 71-72). She was holding a pickaxe and baseball bat. (*Id.*). The officers approached Ms. Wooden to a distance of about fifteen feet and ordered her to get away from the police car. (*Id.*, ¶ 73). Officer Lopez drew his firearm, and Officer Denenea drew his Taser. (*Id.*, ¶ 74). Ms. Wooden complied by backing away from the officers and the police vehicle. (*Id.*, ¶ 75).

Officers maintained an approximately fifteen-foot distance from Ms. Wooden as she backed away. (*Id.* ¶ 78). Officer Williams repeatedly told Ms. Wooden that the officers would not hurt her. (*Id.* ¶ 79).

About five minutes into the encounter, Ms. Wooden's mother ("the mother") drove an electric cart down the driveway and stopped near Officer Williams. (*Id.* ¶ 79). The mother informed Officer Williams that Ms. Wooden was mentally ill. (*Id.* ¶ 80). Ms. Wooden responded to her mother's arrival by backing further away from the officers. (*Id.* ¶ 81). The officers moved toward Ms. Wooden, maintaining approximately the same distance between themselves and Ms. Wooden as she backed away. (*Id.* ¶ 83).

As the standoff continued, the mother suddenly drove her scooter toward Ms. Wooden. (*Id*., ¶ 84). Ms. Wooden reacted by backing further away from her mother and the officers. (*Id*.). Officer Williams ordered the mother to stop and back up, which she did. (*Id*., ¶ 85). Meanwhile, Ms. Wooden continued slowly backing off, while the officers continued to approach and maintained the same distance. (*Id*., ¶ 86).

This is the point at which the allegations in the Complaint do not fully describe the series of events leading up to the tasing and shooting. The Complaint alleges, "Suddenly, and for not apparent reason, Officer Williams pulled out his Taser, motion to the other officers, shouted 'Tase her tase her tase her!' and fired his Taser at Ms. Wooden," hitting her with at least one Taser projectile. (*Id*., ¶¶ 87, 89). "Defendant Lopez reacted to this sudden development by shooting his firearm at Ms. Wooden three times." (*Id*., ¶ 90). Ms. Wooden collapsed to the ground. (*Id*., ¶ 92).

The body camera footage does not contradict the allegations in the Complaint, but it does add facts not included in the complaint. The body camera video shows that when the mother drove toward Ms. Wooden on her scooter and while officers were ordering the mother to stop and back up, she was shouting at her daughter. (Video at 19:20-19:50). Ms. Wooden responded that she would "fucking kill herself." (Video at 19:38). In the next minutes, Ms. Wooden continued to talk about dying or the officers killing her. (Video at 20:18-21:10). Just before Officer Williams fired his Taser, Ms. Wooden moved the pickaxe and bat slightly higher over her shoulder. (*Id*. 21:16-21:18). She did not otherwise move toward or away from the officers. (*Id*.).

Finally, although the Complaint includes statements from Officer Williams that Ms. Wooden responded to being tased by "running at him with a pickaxe," the Complaint alleges only Officer Williams' statement, not that she did, in fact, run toward him. (*See* Compl., Doc. No. 1, ¶¶ 100, 121). The video dispels any doubt on this question – upon being hit with the Taser barb, Ms.

5

Wooden in fact charged towards Officer Williams with the pickaxe and baseball bat held a shoulder height. (Video at 21:22).

Following the shooting, Ms. Wooden spent two months in the hospital and underwent several surgeries. (*Id*., ¶¶ 125-27). She suffered permanent spinal damage and adverse effects to her mental health. (*Id*., ¶¶ 128, 129).

## IV. QUALIFIED IMMUNITY

"Qualified immunity protects officials who must make split-second decisions while protecting the public." *Bell v. City of Southfield, Michigan*, 37 F.4th 362, 367 (6th Cir. 2022). "Officers are entitled to qualified immunity unless they (1) violated a constitutional right (2) that was 'clearly established' at the time of the wrongdoing." *Id*. (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). Once raised by the defendant, the plaintiff bears the burden to show qualified immunity does not apply. *Reich v. City of Elizabethtown, Ky*., 945 F.3d 968, 978 (6th Cir. 2019).

### A. Excessive Force

The Fourth Amendment's prohibition against unreasonable seizures protects citizens from excessive use of force by law enforcement officers." *Palma v. Johns*, 27 F.4th 419, 428 (6th Cir. 2022) (quoting *Godawa v. Byrd*, 798 F.3d 457, 462 (6th Cir. 2015)). In determining whether an officer has used excessive force, courts examine "the totality of the circumstances" and "ask whether the officer's actions were objectively reasonable in light of the facts and circumstances confronting them." *Id*. (internal citations omitted). The Supreme Court has articulated three non-exclusive factors for courts to consider when assessing the totality of the circumstances: "(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether [the suspect] is actively resisting arrest or attempting to

6

evade arrest by flight." *Estate of Hill by Hill v. Miracle*, 853 F.3d 306, 313 (6th Cir. 2017) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Recognizing that these factors do not neatly apply to situations in which there is not an ongoing crime or an individual resisting arrest, the Sixth Circuit has articulated additional factors to consider when officers respond to a medical or mental health emergency: "(1) whether the person was experiencing a mental health or medical emergency, and whether that emergency created an immediate threat of serious harm to themselves or others; (2) whether some degree of force was reasonably necessary to ameliorate the immediate threat; and (3) whether the force used was more than reasonably necessary under the circumstances." *Palma*, 27 F.4th at 429 (quoting *Estate of Hill*, 853 F.3d at 314) (cleaned up). "[T]his list is not exhaustive 'and not necessarily dispositive in every case.'" *Id*.

"Where 'a Plaintiff claims excessive force was used multiple times, the court must segment the incident into its constituent parts …'" *Id*. at 430 (quoting *Wright v. City of Euclid*, 962 F.3d 852, 865 (6th Cir. 2020). Here, Plaintiff claims that Officer Williams used excessive force by tasing Ms. Wooden and that Officer Lopez used excessive force by shooting her. The Court considers each in turn, beginning with the use of the Taser.

1. The Taser

Defendants contend that the use of the Taser was objectively justified in order to take Ms. Wooden into custody for mental health assessment and treatment. (Doc. No. 11 at 11). They point to the allegations of the Complaint stating that Ms. Wooden was in a mental health crisis, she called 9-1-1, provided her address, and said she wanted police to come to her house so they could shoot her. (Compl., Doc. No. 1, ¶¶ 66-67). When the police arrived at the scene, Ms. Wooden was holding a pickaxe and baseball bat. (*Id*., ¶¶ 70-72). At the time of the use of the Taser and subsequent shooting, Ms. Wooden had not relinquished these items. (*See* Video at 21:16).

7

Defendants argue that under the circumstances, Officer Williams' single use of the Taser to attempt to control Ms. Wooden so that she could be taken for a mental health evaluation and treatment was objectively reasonable.

"Officers may use non-lethal force – such as tasers or pepper spray – if they have an 'objective justification' for doing so." *Palma*, 27 F.4th at 430 (citing *Gaddis v. Redford Twp.*, 364 F.3d 763, 774 (6th Cir. 2004)). "The Fourth Amendment requires an official seizing and detaining a person for a psychiatric evaluation to have probable cause to believe that the person is dangerous to himself or others." *Monday v. Oullette*, 118 F.3d 1099, 1102 (6th Cir. 1997).

Here, officers had probable cause to believe that Ms. Wooden, who was carrying dangerous objects and directing the police to shoot her, presented a danger to herself or others. The question of whether it was reasonable to use the Taser to seize Ms. Wooden is not so easily resolved. It appears that in the moments before Officer Williams deployed the Taser, the mother's arrival complicated the situation. Nevertheless, Ms. Wooden had not significantly changed her conduct and remained at a distance from the officer. Perhaps if they had stayed the course for an additional period of time, she could have been taken into custody without the need for force. Accordingly, the Court finds Plaintiff has plausibly stated a claim that the use of the Taser was an unreasonable under the circumstances.

2. The Shooting

"When an officer uses deadly force, that force is unreasonable unless 'the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others.'" *Palma*, 27 F.4th at 432 (internal quotations omitted). "[T]he threat factor is 'a minimum requirement for the use of deadly force.'" *Id.* (quoting *Jacobs v. Alam*, 915 F.3d 1028, 1040 (6th Cir. 2019)). The reasonableness of the use of force considers "not only 'whether any

force was justified,' but also whether [the officer] could reasonably use the degree of force employed." *Id*. (citing *Roell v. Hamilton County, Ohio*, 870 F.3d 471, 483 (6th Cir. 2017)).

Defendants argue that, at the moment of the shooting, a reasonable officer in Officer Lopez's situation would have perceived that Ms. Wooden presented a deadly threat to Officer Williams because she was charging at Officer Williams from a relatively close distance (15 feet or less) while holding a pickaxe and baseball bat at or above shoulder level. Defendants argue that under these circumstances, even considering Ms. Wooden's mental health crisis, the use of force was objectively reasonable.

Plaintiff argues deadly force was not justified under these circumstances. In addition to Ms. Wooden's known mental health crisis, Plaintiff points to the fact that Ms. Wooden had not threatened the officers at all prior to the use of the Taser and she had only taken two steps forward and was still 10-15 feet from Officer Williams when Officer Lopez fired. (Doc. No. 30 at 8). Plaintiff argues less forceful tactics could have been effective because the 10 to 15 feet was "sufficient distance … for things to deescalate," particularly given that the pickaxe and bat could only be used in close quarters. (*Id*. at 8-9).

Here, the video footage clearly shows a quickly unfolding situation where, in a matter of seconds, Ms. Wooden was tased and then charged at Officer Williams with a pickaxe and baseball bat hoisted above her shoulder from a relatively close range of 10-15 feet. (Video at 21:20 (taser) to 21:22 (shooting)). But given that the pickaxe and bat could only be used at very close range (closer than 10-15 feet), was it possible that Officer Williams could have evaded harm by moving out of her reach or that Ms. Wooden would have stopped before she reached striking range? More to the point, would a reasonable officer perceive that Ms. Wooden posed a threat of serious harm? The allegations of the Complaint and the Video do not clearly answer this question. The Court is

9

not suggesting that there is some minimum distance required before an officer may shoot a mentally ill person charging at him with a pickaxe. The distance is only one consideration in the totality of the circumstances. But here, given the distance and the weapons involved, the Court finds Plaintiff plausibly states a claim that Officer Lopez used excessive force when he shot Ms. Wooden.

### B. Clearly Established

To show that the right was clearly established, the plaintiff must point to a case showing that reasonable officers would have known their actions were unconstitutional under the specific circumstances they encountered. *Bell v. City of Southfield, Michigan*, 37 F.4th 362, 367 (6th Cir. 2022) (citing *Cunningham v. Shelby Cty.*, 994 F.3d 761, 765 (6th Cir. 2021). It is not enough for Plaintiff to argue that there is a clearly established Fourth Amendment right to be free from excessive force – "that defines the right at too high a level of generality." *Mosier v. Evans*, 90 F.4th 541, 546 (6th Cir. 2024) (citing *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 8 (2021) (per curiam)). "Instead, when it comes to excessive force, the [Supreme] Court has repeatedly [held] that specific cases are 'especially important.'" *Bell*, 37 F.4th at 367 (citing *City of Tahlequah v. Bond*, 142 S. Ct. 9, 11–12 (2021) (per curiam); *Kisela v. Hughes*, 138 S. Ct. 1148, 1152–53 (2018) (per curiam)). "The unlawfulness of the officer's acts 'must be so well defined' that no reasonable officer would doubt it." *Id.* (quoting *Bond*, 142 S. Ct. at 11). "That usually requires 'a fact pattern similar enough' to put the defendant on notice." *Mosier*, 90 F.4th at 546. In addition, the caselaw identified by the Plaintiff must be from a published decision of the Sixth Circuit or the Supreme Court. *Id.* at 368 (noting that the case cannot place the constitutionality of certain conduct "beyond debate" if it doesn't even bind future Sixth Circuit panels). Finally, and logically, because the case must have provided notice to officers about the illegality of specified conduct, the published

10

decision must have preceded the conduct at issue. *See Sumpter v. Wayne Cty*, 868 F.3d 473, 486 (6th Cir. 2017) (finding that cases decided after the events at issue "could not have put the defendant on notice that her conduct was unconstitutional"). With this standard in mind, the Court turns to whether it was clearly established that Officer Williams' use of the Taser and Officer Lopez's shooting violated Ms. Wooden's constitutional rights.

Plaintiff has not met his burden of identifying a case that should have put the officers on notice that tasing or shooting Ms. Wooden was unlawful under the circumstances presented here. Plaintiff points to two cases: *Palma v. Johns*, 27 F.4th 419 (6th Cir. 2022), and *Russo v. City of Cincinnati*, 953 F.2d 1036 (6th Cir. 1992). *Palma*, while instructive on the reasonableness of use of force with regard to persons with known mental health concerns, could not have put the officers on notice that their actions were an excessive use of force for the simple reason that the case was decided almost a year after the events in this case. *See Sumpter*, 868 F.3d at 486.

Timing issue aside, the facts in *Palma* are distinguishable. In *Palma*, an officer tased and then shot a mentally ill man who was not verbally threatening the officer, was not making threatening movements or gestures, and gave officers little reason to suspect he was armed or dangerous. *Palma*, 27 F.4th at 430-31, 441, After a detailed analysis, the Sixth Circuit held that tasing or shooting a person under those circumstances was an unreasonable use of force. In comparison, here, Ms. Wooden was armed with a long-handled pickaxe and a baseball bat hoisted over her shoulder and was shouting that she wanted the police to kill her. And within seconds of being tased by Officer Williams, she charged at officers from a distance of 10-15 feet. Even if *Palma* had been decided before the events in this case, it would not have put the officers on notice that tasing or shooting Ms. Wooden under these circumstances was an unreasonable use of force.

*Russo* does not suffer from a timing problem, but it too would not have provided notice to officers about the illegality of using a Taser on Ms. Wooden in order to take her into custody for purposes of a mental evaluation and treatment. Nor would it have provided notice that shooting Ms. Wooden when she charged at Officer Williams with a pickaxe and a baseball bat was an unreasonable use of force.

As in this case, the officers in *Russo* responded to a call concerning a mentally ill person. *Russo*, 953 F.2d at 1039-40. Ultimately, the officers tased and shot the subject multiple times. *Id*. at 1040. The first use of force took place after officers confronted the subject on the threshold of his apartment and found the subject armed with a butcher knife in each hand. *Id*. at 1040-41. Officers knew that the subject was "potentially suicidal and homicidal." *Id*. at 1039, 1044. Initially, the officers fired two taser darts, but the subject "overcame the effect of the Taser and rushed toward [an officer] both knives pointed at him." *Id*. at 1040. Two other officers on the scene "immediately fired their revolvers several times at [the subject]." *Id*. The subject then fell down the stairs where the officers proceeded to use tase and shoot him multiple times despite evidence indicating that he did not pose an immediate threat of harm. *Id*.

The *Russo* court found that the officers were entitled to qualified immunity for the use of the taser in all instances and for the first shooting. *Id*. at 1045. The officers were not, however, entitled to qualified immunity for the second and third shootings, which took place approximately 10-12 minutes after the first shooting and after the subject "apparently dropped the knife." *Id*. Because the Sixth Circuit denied qualified immunity only for the second and third shootings, this case would not put an officer on notice that shooting a person who is charging toward them with weapons from a close distance, even one who is known to be experiencing a mental crisis,

12

constituted excessive force in violation of the Fourth Amendment. Accordingly, Officers Williams and Lopez are entitled to qualified immunity.

## V. MUNICIPAL LIABILITY

Defendants seek dismissal of the constitutional claim against Metro Nashville on grounds that Plaintiff has not plausibly alleged a constitutional violation. As discussed above in Section IV.A., Plaintiff has plausibly alleged a constitutional violation. Accordingly, the constitutional claim against Metro Nashville will not be dismissed.

## VI. NEGLIGENCE

Plaintiff's second claim is against Metro Nashville for negligence arising out of the shooting. Specifically, Plaintiff alleges Officer Williams "gave confusing signals to [Officer] Lopez, which Lopez interpreted as a signal to shoot Ms. Wooden with his firearm." (Compl., Doc. No. 1, ¶ 145). Defendants seek dismissal of the negligence claim on grounds that Metro Nashville is immune from liability under the Tennessee Governmental Tort Liability Act ("TGTLA").

Tennessee governmental entities are broadly immune from state-law tort liability. *See Mosier v. Evans*, 90 F.4th 541, 551 (6th Cir. 2024) (citing Tenn. Code Ann. § 29-20-201(a)). The TGTLA selectively waives that broad grant of immunity and creates exceptions to those waivers. As relevant here: "Immunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment except if the injury arises out of ... *civil rights*." *Id*. (citing Tenn. Code Ann. § 29-20-205(2)). (emphasis in original). The Sixth Circuit recently considered what is means for a claim to "arise out of civil rights" and concluded that a claim arises out of civil rights for purposes of the TGTLA when the claim is based on the same facts or is sufficiently related to an accepted civil-rights claim. *Id*. at 553. The plaintiff's characterization of the claims is not dispositive. *Id* at 554.

13

Here, the gravamen of Plaintiff's negligence claim is that shooting Ms. Wooden was unreasonable under the circumstances. This claim arises out of the same facts and is premised on the same use of force as Plaintiff's Section 1983 claim. Accordingly, the civil rights exception to the TGTLA applies, and Count II will be dismissed.

## IV. CONCLUSION

For the reasons stated herein, Defendants' Motion to Dismiss Count I is **GRANTED** in part, and **DENIED** in part. The Motion is **GRANTED** as to Defendants Officer Williams and Officer Lopez, who are both entitled to qualified immunity, but **DENIED** as to Defendant Metro Nashville. The Motion to Dismiss Count II is **GRANTED**.

An appropriate order will enter.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE